■ In the Matter of GARLAND BRADFORD, Petitioner, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Respondents. — Determination, dated February 11, 1981, of respondent Commissioner of the New York State Department of Social Services, after fair hearing, sustaining determination of respondent Commissioner of the New York City Department of Social Services disqualifying petitioner from receiving public assistance for 30 days and until willing to comply with requirements relating to employables, is reversed, on the law, and the determination is annulled, without costs. The evidence at the fair hearing was not sufficient to justify an inference that petitioner failed or refused to accept manpower services. (See 18 NYCRR 385.7 [a] [2]; 385.8 [b].) At most, the evidence would

warrant a finding that because of certain personality traits petitioner was not a desirable employee. That may be a reason for not continuing him in the employment to which he was assigned; it is not a reason for disqualifying him from receiving public assistance. Concur — Sandler, J. P., Carro, Asch and Silverman, JJ.

Markewich, J., dissents in a memorandum as follows: The determination of the Department of Social Services of the city, confirmed upon administrative appeal by the State department, should be confirmed. Petitioner was assigned, as a condition of receiving welfare payments, to a public works project to perform the not particularly demanding job of file clerk. The substantial evidence at his hearing was to the effect that he failed to perform his job by doing other things instead; it was to the effect that he was the classic disruptive busybody, actively interfering with the ongoing work of the others, continually, as the saying goes, "tossing monkey wrenches in the machinery." He spent his time quarreling with supervisors, not accepting their instructions and indeed subverting them. Instead of merely filing papers, he read them, not part of his work and actually none of his business. As the chronic "goof-off," he was more concerned with conversation with coemployees, often on political topics. Though admonished several times, he became worse, and was eventually terminated as disruptive and unemployable. The practice of "making work" for welfare recipients is too well known as desirable to require comment here. By his conduct, petitioner departed from what should have been the norm of co-operative behavior to be expected from one in his position to the extent that, rather than performing his job, he was sabotaging it. Co-operation with superiors is a *sine qua non* in performance of any job. Failure to co-operate by disruption of the workplace is failure to perform. And all of this was established by substantial evidence. Belatedly, petitioner for the first time on this appeal raises a procedural question as to a lack of investigation prior to notice of intent to terminate payments. This point was never made on his administrative appeal, and indeed he had ample opportunity to refute the evidence against him, and he did not. The regulation under which petitioner was assigned to work is eminently reasonable both in text and in application. Petitioner, in effect, terminated his own employment (18 NYCRR 385.7 [a] [2] [v]; 385.8; *Matter of Tillman v Fahey*, 73 AD2d 980, affd 53 NY2d 815; *Matter of Herman v Blum*, 78 AD2d 552, affd 54 NY2d 677; *Matter of Rucker v Blum*, 85 AD2d 918). The observation in this court's memorandum that "because of certain personality traits petitioner was not a desirable employee" does not have validity. Not the traits but their acting out subversively constitutes the basis for termination. If there is a psychological or psychiatric disability behind petitioner's conduct, petitioner has not claimed that it exists. It is not this court's function arbitrarily to set aside the regulations of an administrative agency, and we should confirm.