OPINION OF THE COURT
Donald J. Mark, J.
This is an application by the defendants, Jannie Dudley and Linda Washington, who have been charged with the crimes of murder, second degree (two counts), burglary, first degree (two counts), attempted arson, second degree, and unlawful imprisonment, first degree (two counts), pursuant to CPL 710.20 (subd 3), to suppress statements made by them to the police and an Assistant District Attorney upon the ground that they were obtained by means of a promise in violation of CPL 60.45 (subd 2, par [b], cl [i]).[1]
The parties have stipulated that the police and Assistant District Attorney promised the two defendants that they *984 would not be prosecuted for the said crimes if they gave written statements regarding the incident in question and cooperated with the District Attorney in the prosecution of the other named defendants. The parties also stipulated that the defendants gave the requested statements, that they were not charged with any crimes as a result of the incident and were permitted to leave police custody, and that subsequently when the matter was presented to the Grand Jury, the defendants did not testify before that body. They, along with the other defendants, were indicted for all the crimes arising out of this incident.
The prosecution claims that the statements are admissible, despite the promise, because the defendants reneged on their agreement to cooperate with the District Attorney by making themselves unavailable during the presentment to the Grand Jury. The defense denies that the defendants failed to cooperate, but claims that even if this is correct, the law still mandates suppression because a statement induced by a promise by the police or prosecutor renders any such statement void.
The case law on this issue establishes two different rules of law regarding when a confession induced by a promise will be inadmissible.
The first rule of law, which is evidently a New York State rule only, is contained in CPL 60.45, which provides in part as follows:
“A confession, admission or other statement is ‘involuntarily made’ by a defendant when it is obtained from him 5¡5
“(b) By a public servant engaged in law enforcement activity * * *
“(i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself”. (CPL 60.45, subd 2, par [b], cl [i].)
Pursuant to this statute, a confession induced by a promise can be admissible, so long as the promise is not of the type that would create a risk of false incrimination. Thus, in People u Perry (77 AD2d 269), for example, the First Department held that statements urging the defen *985 dant to tell the truth and offering only a possibility, rather than a concrete promise, of a lesser charge did not constitute an impermissible promise under CPL 60.45, so that the defendant’s resulting confession was admissible. In reaching this decision, the court held: “Under this statutory language, promises or statements of fact alone are insufficient to evoke the exclusionary rule, but must rise to the level of those promises or statements which create a substantial risk that a defendant might falsely incriminate himself” (p 273).
Likewise, in People v Bulger (52 AD2d 682), the Third Department determined admissible the defendant’s confession, induced by a police officer’s statement that he would report defendant’s cooperation to the District Attorney, although he would not make any promises, based solely on CPL 60.45; and in People v Yerdon (51 AD2d 875), the Fourth Department similarly considered only that statute in determining that the defendant’s confession was admissible, even though the statement inducing the confession in that case was that defendant would not be arrested. (See, also, People v Dunbar, 53 NY2d 868, 870, holding that a promise to defendant that “ ‘the book would be closed’ ” would at most entitle defendant to suppression of his statement pursuant to CPL 60.45, without further explanation; see, also, People v Urowsky, 89 AD2d 520.)
As a further result of CPL 60.45 and its progeny, there exists a line of cases in New York State holding that a promise will not render a subsequent confession involuntary within the meaning of CPL 60.45 if the promisor has no authority to enforce that promise. Thus, a promise of a lesser charge, if given by a prosecutor, would render a statement inadmissible, whereas, if given by a police officer, it would not (People v De Jesus, 63 AD2d 148, app dsmd 48 NY2d 734; People v Rittenhouse, 37 AD2d 866; People v Bolla, 112 Misc 2d 703; People v Bracey, 98 Misc 2d 346).
In contrast to this “New York” rule as embodied in CPL 60.45, the United States Supreme Court has set forth an apparently per se rule invalidating any confession induced by a promise, however slight. In Bram v United States (168 US 532, 539) the court reversed a murder conviction where the defendant was told “‘[i]f you had an accomplice you *986 should say so, and not [take] the blame of this horrible crime on your own shoulders’ ” on the grounds that the resulting confession was involuntary. In arriving at this holding, the court stated (quoting from 3 Russell, Crimes [6th ed], p 478): “ ‘But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence * * * A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted’ ” (pp 542-543).
While Bram (supra) was written in 1897, it is still cited by both New York courts and the United States Supreme Court as the leading case on this issue[2] (see Hutto v Ross, 429 US 28; Brady v United States, 397 US 742; Malloy v Hogan, 378 US 1; People v Vail, 90 AD2d 917; People v Bay, 76 AD2d 592, app dsmd 54 NY2d 808; People v Andino, 80 Misc 2d 155), all for the rule that statements obtained by any direct or implied promise, however slight, are inadmissible (see, also, People v Benthall, Feb. 14, 1984, NYLJ, p 15, col 4, in which the court, in determining whether a search warrant was sufficiently attenuated from the witness’ confession under the fruits of the poisonous tree doctrine, concluded without discussion that the witness’ confession was involuntary and therefore illegal since it was induced by a promise of nonprosecution). Furthermore, these same courts have held the Bram rule to be a constitutional rule, stemming from the Fifth Amendment guarantee against self incrimination. It is clear, therefore, that Bram and its progeny are binding in the State courts as well.
Applying either one of these two rules to the case before this court, it is clear that defendants’ confessions are *987 involuntary and therefore inadmissible at trial. Under CPL 60.45, and especially in view of the parties’ stipulation regarding the promise made in this case, there was a very real risk of false incrimination here, defendants being promised, not by the police but by an Assistant District Attorney, that they would not be charged if they gave written statements (see People v De Jesus, supra; People v Bolla, supra). The fact that there was a condition subsequent attached to that promise does not take this case outside of the law of confessions and into the realm of contract law (see People v World, 121 Misc 2d 148), as at the time defendants made these statements, they nevertheless did so relying on a promise of nonprosecution by the People (see, also, People v Andino, supra). Under Bram and its progeny, defendants’ confessions are likewise inadmissible by the mere fact that a promise was made, without regard either to any risk of false incrimination or any condition subsequent.
While there is very little New York case law involving promises containing a condition subsequent, this case is similar factually to People v Andino (80 Misc 2d 155, supra). In Andino, the defendant was interrogated by an Assistant District Attorney concerning her source of supply of drugs. The prosecutor told defendant that if convicted she faced 15 years in prison before any possibility of parole, but that if she “worked with [them]” (p 156) he would let her plead to a lesser crime, and possibly defendant would receive no jail time at all. The defendant agreed to cooperate and then made a statement concerning her dealings in cocaine. Following her arraignment, she failed to give her continued cooperation as agreed, and was subsequently indicted for the class A felony.
The Andino court (supra, p 158) first found that defendant’s waiver of her Miranda rights was not knowing and intelligent, and then found on independent grounds that the statement was involuntary “under long-established principles, having been induced by a promise that ‘some benefit as to the crime and its punishment [would flow] from making a statement’ ”. The court cited both Bram (supra) and CPL 60.45 as authority for this conclusion, and never even considered the issue of whether defendant’s *988 pledge of continued cooperation had any effect upon the admissibility of the statement on voluntariness grounds, evidently deciding that the promise alone in that case was sufficient to render the statement void.
The promise made to defendants in this case was even more enticing than the promise in Andino (supra) — defendants here were told they would not be prosecuted at all if they gave a written statement. The statements given were consequently involuntary, and therefore inadmissible.
Accordingly, the application of the two defendants to suppress their statements made to the police because they were obtained by means of a promise is granted.
This decision constitutes the order of the court.

. This issue became moot when both defendants, as a result of plea bargaining entered guilty pleas to attempted burglary in the second degree and unlawful imprisonment in the second degree. However, by the time of such pleas, research had been completed and a resolution made. Because of the complexity of this problem, it was determined to issue this decision nevertheless (Matter of Hearst Corp. v Clyne, 50 NY2d 707; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, affd 443 US 368).

. In People v Diaz (77 AD2d 523, 524, affd 54 NY2d 967), the First Department held that the Bram holding was not a general rule of law, but was instead limited to the facts of that case. Other cases citing Bram do not so limit the case to its facts, however. (See, also, People v Taylor, 87 AD2d 771, 775 [concurring opn of Lupiano, J., holding that the Bram rule should not be applied with wooden literalness], affd 57 NY2d 729).